# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

Rudolph V. Hardin              (
        Petitioner,     (
                        (     Case # 1:06-cv-220 (JJF)
      V.                   (
                        (
State of Delaware         (
        Respondents    (

## PETITIONERS WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2254, FOR THE DISTRICT OF DELAWARE

FILED

NOV 3 0 2006

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

Dated: Nov. 28, 2006

Rudy V. Hard~

Petitioner # 180391
D.C.C.
1181 Paddock Road
Smyrna, DE 19977

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

**Rudolph V. Hardin**
   **Petitioner,**

**Case # 1:06-cv-220 (JJF)**

  **V.**

**State of Delaware**
   **Respondents**

---

**Petitioner's Reply**

---

Pursuant to Rule 5 (e) of the Rules Governing Section 2254
Actions, 28 U.S.C. foll. § 2254, petitioner states the following
reply to the respondents answer to the petition for a writ of
habeas corpus:

Petitioner (Hardin) was charged by indictment with trafficking
cocaine .5 to 50 grams,possess.with intent to deliver,possess. of
marijuana,maintaining a vehicle. see: app.exhibit (a).

On December 13,2002,petitioner (Hardin) filed a motion to
suppress the evidence based on an unlawful search and seizure.
This motion was denied on January 10,2003,by the Superior Court
holding that the officers had sufficient probable cause to arrest
Hardin based on the criminal informant's tip and even assuming there

was not sufficient probable cause, the officers seized the contraband in the car in plain view. see: app.exhibit (c),pg.98,99,100.

A jury trial was held on May 28 & 29,2003 before Judge Haile L. Alford.

Petitioner (Hardin) was convicted in Delaware Superior Court of the previous mentioned offenses.

Petitioner (Hardin) moved for judgment of acquittal on the basis that the state had failed to establish "intent to deliver" sufficient enough to sustain the conviction. see: app.exhibit (f),pg.89.

After this motion was denied a guilty verdict was returned on all counts. Hardin was sentenced to a total of eight years imprisonment followed by a period of probation. see: app.exhibit (g).

Hardin's direct appeal was submitted February 3,2004 which was decided on March 11, 2004. see: app.exhibit (h).

After Hardin reviews the Supreme Court's ruling of his first appeal and realizes the original probable cause (informant) and sequence of events have been altered and clearly erroneous, it is Hardin's understanding that the doctrine of the law of the case is flexible, unlike res judicata, and will not be enforced where doing so would create manifest injustice.

Research Group V. Magesium Elektron,Inc., 123 F.3d 111.

Hardin then files a pro se motion in Supreme Court titled "Motion to Correct Fraudulent and Erroneous Facts. see:exhibit (i). Hardin was informed by Supreme Court his case was closed when the mandate was issued. see:app.exhibit (i) pg.25.

Hardin then filed a similar pro se motion in Superior Court titled "Motion to Review & Correct Record. see: app.exhibit (j). This motion was denied on grounds (1),Supreme Court affirmed the order (2),Hardin's request for correction of the record was unprecedented and (3),untimely. see: app.exhibit (j) pg.23.

In rebuttal to Superior Court's denial of Hardin's motion (1) Hardin's reasoning for filing the pro se motion was that Supreme Court's affirmation was a miscarriage of justice because of the constitutional violation that undermined the fundamental legality, reliability, integrity or fairness of the proceedings leading to the judgment of conviction (2) accordingly, Hardin's claim was colorable and precedented pursuant to Weedon V. State, 750 A.2d 521; Hamilton V. State,831 A.2d 881; Brittingham V. State, 705 A.2d 577; Research Group V. Magnesium Elektron Inc., 123 F.3d 111, and (3) Hardin's pro se motion was not untimely since there are no statue or time limitations on pro se motions pursuant to Super. Court Rule 47 or when a miscarriage of justice has occured because of a constitutional violation that undermined the fundamental legality, reliability, integrity or fairness of the proceedings which lead to the judgment of his conviction.

It was Hardin's contention that until these fraudulent and erroneous facts contained in the record were corrected any and all future appeal efforts would be to no avail.

Due to the significance of Hardin's claim he amends and re-enters the same exact motion adding to Super. Court 47, Super. Court Rule 36 clerical mistakes. see: app.exhibit (k) pg.a,b.

That motion was denied and treated as Hardin's postconviction which at that point had not yet been filed in the Courts. see: app. exhibit (k).

The grounds of that denial was Hardin's claim was already addressed both at trial and on direct appeal, therefore, the motion was duplicative and procedurally barred by Rule 61 (i). see:app. exhibit (k) pg.23.

In rebuttal to the denial of Hardin's second pro se motion in Super. Court,the Fourth Amend. claim was not addressed at trial due to the ruling at the suppression hearing when the fruits of Hardin's constitutional claims were ruled on under an alternative and fraudulent probable cause (plain view & inevitable discovery) not included in the original written affidavit but admitted during an after-the-fact scrutiny by the Court (see:app.exhibit c,pg.6-7), therefore, not seized in violation of Hardin's Fourth Amend.rights.

As for this matter being addressed in great detail during the direct appeal, the Fourth Amendment claim was addressed in ground one,however, the foundation the State Courts use to justify Hardin's Fourth Amend.violation is supported by prosection's introduction and reliance of an alternative and fraudulent probable cause "to fall back on," as prosecution blatantly admits. see: app. exhibit (c) pg.6-7. Counsel never mentioned or challenged this extremely critical element of Hardin's Fourth Amend. claim during direct appeal,therefore, Hardin's Fourth Amend. claim was not given full and fair litigation during direct appeal.

According to the Courts denial of the pro se motions it's
Hardin's belief that the State Courts were acting with a closed
mind denying petitioner a full and fair opportunity to be heard
when treating the motions by other than they actually were and
denying them according to the misidentification of said motions.

Hardin then files a "Notice of Potential Bias" against the
judge who had heard the previous motions based on the Courts
misidentifying the motions and treating them as other than they
actually were.

That notice/motion was referred to the judge it was filed
against,who denied it forthwit. see:app.exhibit (1).

On March 15,2005 Hardin filed his postconviction motion which
was denied on September 12,2005 by the Delaware Super. Court.
see:app.exhibit (M).

Hardin states Superior Court procedurally barred most of the
claims in his postconviction relief by Super. Court Criminal Rule
61 (i) (3) and 61 (i) (4) as a solution simply to avoid reading it's
voluminous contents.

Hardin states, Superior Court failed to review each claim
according to the applicable bars to relief for which each claim was
submitted under in the postconviction's procedural statement.

Hardin's Fourth Amend. claim was not given full and fair
opportunity to be heard in the State Courts during postconviction
as it was barred by Superior Court Criminal Rule 61 (i) (4) former

adjudication, and not reconsidered under 61 (i) (4) which also warrants reconsideration of a formerly adjudicated claim in the interest of justice, which Hardin s Fourth Amend. claim was submitted under in his postconviction s procedural statement.

Furthermore, since it is a colorable claim where a miscarriage of justice resulted because of a constitutional violation that undermined the fundamental legality,integrity or fairness of the proceedings which lead to the judgment of Hardin s conviction , the State Courts should have taken the initiative to review the Fourth Amendment claim under 61 (i) (5).

Two extremely critical factors exist the State Courts decline to consider (1) was mentioned in the respondents answer to the petitioner for writ of habeas corpus at the bottom of page 3, the Court declined to consider whether Hardin s arrest effected prior to the search of his vehicle.

(2). The State Courts allege the vehicle involved in this case to be Hardin s. Due to Hardin never being informed or afforded the right to be heard and to offer testimony at the suppression hearing it caused a breakdown in the adversarial process were States s witnesses and prosecution freely made uncontested allegations, such as the vehicle involved in this case as being Hardin s.

The vehicle is where three of Hardin s four charges were obtained thus,causing a miscarriage of justice which Hardin has repeatedly tried to correct through litigation in State Courts.

Hardin s Fourth Amendment claim has not been given a full and fair opportunity to be heard in the State Courts as shown, thus, the Fourth Amendment claim is cognizable in Federal Habeas Corpus.

I.     Petitioner's 4th & 14th Amendments of the
       United States Constitution to be secure in his persons
       and property against unreasonable searchs and seizures
       were violated when he was arrested without warrants or
       probable cause.

    The presentation of a Fourth Amendment claim is frustrated by
a failure in the state procedural mechanism if there is no
"meaningful" inquiry by the state courts into the Fourth Amend.
claim,either because the state courts did not carefully and
thoroughly address the factual basis of the petitioner's claim
or because the state courts did not apply the proper
constitutional case law to the facts as developed.
Bostic, 3 F.3d at 1027.

    Some of the circumstances when a litigant does not receive a
full and fair hearing in the state court were enumerated  in
Townsend  V. Sain, 372 U.S. 293, 314 -15, 83 S.Ct.745,786 -788;
and cited with approval in Stone V. Powell, 96 S.Ct. 3053.

    The question now arises as to whether the petitioner's 4th
Amendment claims were given a full and fair opportunity to be
heard in the state courts. In Stone V. Powell, the U.S. Supreme
Court held that where the state courts have addressed a
petitioner's Fourth Amendment claims, the cost of applying the
exclusionary rule on collateral review outweigh the modest
benefit of marginally deterring future Fourth Amend. violations.
Stone V. Powell, 428 U.S. 465, 96 S. Ct.3037.

Petitioner will demonstrate that the State Court's rulings were contrary to established federal law and, petitioner was denied full and fair litigation of his Fourth Amend. claim. Stone V. Powell ,428 U.S. 465, 96 S.Ct. 3037.

In Hardin's case ,there were two separate yet consecutive unlawful searches which yielded evidence that should have been suppressed. Hardin's person was searched first while seated on his homes property,followed by,a vehicle search. These searches were unlawful and without warrants. "Searches conducted outside the judicial process without prior approval by judge or magistrate are per se unreasonable under the Fourth Amendment subject only to a few specifically established and well delineated exceptions."

Katz v. United States ,389 U.S. 347,357(1967).

Thus, it is the States burden to establish that a warrantless search or seizure is constitutional.

On September 13,2002,three undercover officers (Sullivan, Freebery, Chickadel) were partnered together in the same vehicle while working the F.B.I.joint task force.(app.exhibit c,pg.10).

Detective Sullivan the driver of the police S.U.V.(app. exhibit c,pg.53) receives a tip from an unidentified criminal informant that there was a heavy - set black male, wearing a blue hoody seated inside a black Lincoln Continental parked at 4th and Rodney St. across from the laundromat selling drugs.(app. exhibits B,pg.6 , C -pg.10).

The two officers partnered with Det.Sullivan in the same vehicle when he received the tip were not privy to the information (app.exhibit c,pg.43,53),as well as contradictions in officers testimony as to how the unidentified informer's information was received. (app.exhibit c,pg.18/41).

Franks V. State of Del.,438 U.S. 154,98 S.Ct. 2674 (1978).

Det. Sullivan testified that the unidentified informer's tip contained only readily observable facts to anyone in the area (general physical description, app.exhibit c,pg.35) and when  asked questions of the informant requiring a more personal knowledge the informant did not know. (app.exhibit c,pg.24-25).

U.S. V. Nelson, 284 F.3d 472 (3rd Cir.2002).

Once officers arrive in the proximity of the informant's given location Hardin is seen leaving the proximity of the reported vehicle, at which point, Hardin walks over to a residence in the 300 block of N. Rodney St. and sits on the front porch.(app.exhibits b-pg.6, c-pg.14). The residence was soon after confirmed to be Hardin's home. (app.exhibits c-pg.52 f-pg.77).

Each officer involved testified from the moment they first seen Hardin until his arrest they observed no suspicious or illegal activity. (app.exhibit f,pg.46,77,83).

With nothing corroborated other than the readily observable facts(physical description) to anyone in area officers Sullivan, Chickadel and Freebery unreasonably intrude onto the private dwelling without warrants,exigent circumstances or probable cause.(app. exhibit c,pg.14,33).

U.S. V. Dunn, 480 U.S. 294,107 S.Ct.1134 (1987).

**3**

Once the three officers surround Hardin on his porch Det.
Chickadel instructs Hardin to place his hands on the porch railing
(app.exhibit c,pg.14-15,33,44) at which point Hardin is (seized)
arrested and thoroughly searched.

U.S. V. McCray, 148 F.Supp.2d 379 (D.Del.2001).

Seizure of person within meaning of 4th & 14th Amendment occurs
when taking into account all of the circumstances surrounding
encounter, police conduct would have communicated to a reasonable
person that he was not at liberty to ignore police presence and go
about his business. U.S.C.A. Const. Amends.4th & 14th.
Kaupp V. Texas, 538 U.S. 626, 123 S. Ct. 1843 (2003).

There was no suspicious behavior to indicate that Hardin was
armed nor did he make any furtive gestures or other movements that
would suggest he was armed. (app.exhibit c,pg. 45).

While the officer stated a general concern for safety because
"drug dealers often carry weapons," the mere belief that an accused
is a drug dealer does not justify the search of Hardin's person.

Therefore, officers failed to articulate any grounds to justify
the protective pat-down search of Hardin.By officer Chickadel's own
admission he goes beyond the investigatory Terry stop and protective
pat-down and conducts a full thorough search of Hardin's person
for the reported contraband. (app.exhibit c,pg.34,39).
Sibron V. New York, 392 U.S. 40, 88 S. Ct. 1889 (1968).

The search of Hardin's person netted seven very small zip-lock bags of crack cocaine the identity of which could not have been readily apparent through plain touch of a protective pat-down.(app.exhibit f,pg.38-39).

The purpose of the "pat-down" search is not to uncover evidence of criminal activity, but to permit the officer to conduct his investigation without encountering a violent response. Adams V. Williams,407 U.S. at 146(1972); Maryland v. Buie ,494 U.S. 325, 336(1990); Michigan V. Long, 463 U.S. 1032,1050 (1983).

If the protective search goes beyond what is necessary to determine if the suspect is armed, it is no longer valid and it's fruits will be supressed. U.S.C.A. Const. Amend. 4. Minnesota V. Dickerson, 508 U.S. 366, 113 S.Ct.2130(1993).

Hardin's seizure is similar to that found to be unlawful in Florida V.J.L.. In that case,officers had no reason to suspect illegal activity apart from the tip. Id.at268. While the tip in J.L. was "anonymous," the rationale is the same as in Hardin's case where there was no demonstration of the tipsters ability to predict future behavior of the suspect.

Florida V. J.L.,529 U.S. 266, 120 S.Ct. 1375(2000).

U.S. V. Nelson,284 F.3d 472 (3rd Cir.2002).

The officers in Hardin's case did not have reasonable suspicion that Hardin was involved in criminal activity as required to perform the investigatory Terry stop, when officers receive tip of drug dealing that provides only readily observable information and they themselves

5

observe no suspicious behavior as each officer testified. (app.
exhibit f,pg.46,77,83). U.S.C.A. Const.Amend. 4.
U.S. V. Roberson, 90 F. 3d 75 (3rd Cir.1996).
U.S. V. Nelson, 284 F.3d 472 (3rd Cir. 2002).

While states are obligated to protect at a minimum citizens
federal constitutional rights, states may enact laws that afford
more protection than provided by the federal constitution.
However, in such instances a violation of these state laws would
amount to federal due process violations. U.S.C.A. Const. Amends.5,14.

For example, in this case officers were obligated to abide by
11 Del. C. 1902 regarding Terry stop situations (see: Jones V. State,
745 A.2d 856 (Del.1999)) and; 11 Del.C.1903 regarding the protective
pat-downs,however, officers in this case failed to do so.
see: Hicks V. State,631 A.2d 6 (Del.1993).

The probable cause needed to arrest Hardin required the tip
be reliable in it's assertion of illegality not just in it's
tendency to identify a determinable person. J.L.,529 U.S. at 272.

Thus, any reliance by the state on the criminal informant to
justify Hardin's arrest is misplaced.

Florida V. J.L.,529 U.S. 266, 129 S.Ct. 1375 (2000); U.S. V. Roberson,
90 F.3d 75 (3rd Cir.1996); U.S. V. Nelson, 284 F.3d 472 (3rd Cir.2002).

Accordingly, the contraband located on Hardin's person and any
evidence obtained thereafter are the fruits of the poisonous tree
and should have been suppressed pusuant to Wong Sun V. United States,
371 U.S. at 488 (1963).

6

The exclusionary rule mandates that evidence derived from constitutional violations may not be used at trial because illegally derived evidence is considered fruit of the poisonous tree. U.S. V. McCray, 148 F.Supp.2d 379 (D.Del.2001).

After the illegal search of Hardin's person on his homes front porch Det. Sullivan and Freebery walked over to the reported vehicle which was parked several feet away and illegally searched the car Hardin had been seen in proximity of prior to his arrest. Chimel V. CA., 395 U.S. 752,89 S.Ct. 2034 (1969); U.S. V.Myers, 308 F.3d 251 (3rd Cir.2002).

The search of the vehicle is where the majority of the drugs in this case were found, also where three of the four charges (trafficking cocaine,posssession of marijuana,maintaining a vehicle) inwhich Hardin was convicted were obtained.

Even if the Court found that the initial stop and pat-down of Hardin was legitimate officers were still not authorized to search the vehicle.

Whenever possible,police are required to obtain judicial approval in order to conduct a search.

Chimel V. CA., 395 U.S. at 763.

The timing of the vehicle search itself disqualifies it from protection of "search incident to an arrest" exception to the warrant requirement.

U.S. V. Myers, 308 F.3d 251 (3rd Cir.2002).

Scope of such search incident to arrest must be strictly tied to and justified by circumstances which rendered it's initiation permissible. U.S.C.A. Const. Amend.4.

7

In U.S. V. Myers, defendant's bag was not accessible to him at the time of his arrest,and thus, police officers search of the bag was not permissible search incident to arrest, and gun found in bag was subject to suppression in prosecution for possession of firearm by convicted felon; defendant was handcuffed behind his back, lying face down on the floor, and "covered" by two armed police officers. U.S.C.A. Const. Amend.4.

In Hardin's case which is factually similar to U.S. V. Myers, the vehicle did not belong to Hardin nor was he accessible to the vehicle at the time of his arrest,and thus, police officers search of the vehicle was not permissible search incident to arrest, and the drugs found in the vehicle that only came into "plain view" during the vehicle search was subject to suppression in prosecution for maintaining a vehicle,trafficking cocaine and possession of marijuana; Hardin was handcuffed behind his back on his homes front porch,and "covered" by three armed police officers. see;app.exhibit (c), page 14-15. U.S.C.A. Const. Amend.4.

Again, each of the arresting officers testified they seen nothing illegal or suspicious prior to Hardin's arrest. see;app.exhibit (f), pages 46,77,83.

Search incident to arrest is only "reasonable" within meaning of Fourth Amend.when it's confined to,and controlled by,circumstances that warrant intrusion. Hardin was already arrested on his homes front porch (see;app.exhibit c,pg.14-15),therefore,no such circumstances exist in Hardin's case that warranted intrusion of

8

the vehicle.

U.S. V. Myers, 308 F.3d 251 (3rd Cir.2002).

Prosecutor aware the readily observable facts (physical description) provided by the criminal informant may not provide sufficient probable cause to justify the warrantless arrest of Hardin on his homes property when arresting officers themselves observe no suspicious behavior or illegal activity,as each officer testified. see;app.exhibit (f) pages 46,77,83.

U.S. V. Roberson, 90 F.3d 75 (3rd Cir.1996).

Therefore,as a remedy,an alternative probable cause to fall back on, as prosecution blatantly admits (see:app.exhibit (c) pg.6-7); despite the illegal arrest of Hardin's person taking place first, and officer Sullivan's own admission that the drugs obtained inside the vehicle could not be seen in plain view from a lawful vantage point outside the vehicle (see:app.exhibit (c),pg.32), prosecution at the suppression hearing as a remedy for the Fourth Amendment violation of Hardin's constitutional rights fraudulently and intentionally misrepresents the evidence reciting his own version and sequence of events,introducing into the record evidence from the second illegal (vehicle) search under the plain view and inevitable discovery doctrines. (see:app.exhibit (c) pg.6-7).

The plain view and inevitable discovery doctrines introduced by prosecution during an after-the fact scrutiny by the Court were not included in the original written affidavit of probable cause which the Court was aware and should not have allowed. see:app. exhibit (c) pg.7.

U.S. V. Williams, 3 F.3d 69 (3rd Cir. 1993).

U.S. V. Whitner, 219 F.3d 289 (3rd Cir.2003).

It was an abuse of the Courts discretion when allowing prosecution to introduce and rely on the plain view & inevitable discovery doctrines (see:app.exhibit (c) pages 6-7) during an after-the fact scrutiny by the Court of officers probable cause when making the warrantless arrest of Hardin on his homes property.

SCHNEIDER EX REL. ESTATE OF SCHNEIDER V. FRIED, 320 F.3d 396 (3rd Cir.2003).

The inevitable discovery prosecution introduces into the record as justification of Hardin's Fourth Amendment violation allows evidence procured as result of illegal search to be introduced if prosecution can establish by preponderance of evidence that information ultimately or inevitably would have been discovered by lawful means. U.S.C.A. Const. Amend.4.

U.S. V. Cabassa, 62 F.3d 470 (2nd Cir.1995).

U.S. V. Davis, 332 F.3d 1163 (9th Cir.2003).

However, anytime a motor vehicle is involved in a situation inwhich a police officers assistance is needed it is a requirement that police officers run background checks on the vehicle as well as it's owner or operator. Since Hardin's arrest/incarceration on September 13, 2002 Hardin has obtained documents from the D.M.V. that show Hardin has never had a driver's license (see:app.exhibit (o) pages 1-2),thus,unable to register or operate a motor vehicle. The vehicle was not registered or insured but listed as transfer under the owner/last owner's name. (see:app.exhibit (o) pg.5).

10

Hardin was not in the vehicle's proximity when arrested   (see:app. exhibit (c) pg.14) and there were no keys of any sort found on Hardin's person .

With no legitimate way to connect Hardin to the vehicle in which the majority of the drugs in this case were found arresting officers and prosecution intentionally used misleading and perjured testimony by the repeated use of names when referring to Hardin as; the operator, see:app.exhibit (c) pg.14, his vehicle, see:app.exhibit (c) pg.17, the driver immediately opened the door, got out, see:app.exhibit (f) pg.30, is the driver of the car here today, he is, seated at the defense table, see:app.exhibit (f) pages 30-31, his car (5x),see: app.exhibit (f) pages 45-46, his vehicle,see:app.exhibit (f) pg.45, etc., all of which constituted a vital link in circumstantial evidence.

In Miller V. Pate, where a pair of man's undershorts,which were repeatedly described as "bloody shorts" in prosecution for murder of an eight year old girl in a brutal sex attack, constituted a vital link in circumstantial evidence on which defendant was convicted, although prosecution knew at trial that the shorts were stained with paint,deliberate misrepresentation invalidated conviction! Miller V. Pate, 386 U.S. 1, 87 S.Ct. 785 (1967).

By State's witnesses and prosecution repeatedly referring to Hardin by the misleading names mentioned above  it also created the perception that, since the vehicle belonged to Hardin it would be impossible for him not to be knowledgable of the illegal contraband inside "his vehicle".

11

Had any of the names used by State's witnesses and prosecution been fact when referring to Hardin he'd been charged with driving and motor vehicle violations as well, since never having a driver's license (see:app.exhibit O,pages 1-2) and, the vehicle in question not being registered or insured but listed as transfer under the owner/last owner's name. (see:app.exhibit O,pg.5).

This is not harmless error! The cause and prejudice created by these misleading names are the sole purpose of Hardin's fundamentally unjust incarceration.

Engle V. Isaac, 456 U.S. 107, 102 S.Ct. 1558 (1982).

The State Court alleged Hardin to have dominion and control of the vehicle in question due to intentional misleading names used by State's witnesses (arresting officers) and prosecution, compounded with officers testifying to seeing Hardin exit the vehicle.

However, dominion and control sufficient to establish constructive possession of drugs are not established by mere proximity to drugs, or mere presence on property where they are located, or by mere association with person who controls drugs or property. U.S. V. Jenkins, 90 F.3d 814 (3rd Cir.1996).

Nothing linked Hardin to the vehicle or the drugs found therein, therefore, it is not inevitable that the illegal drug contraband contained inside would have been discovered by lawful means, thus, the "plain view and inevitable discovery doctrines" allowed to justify the illegal arrest of Hardin are in error.

U.S. V. Cabassa, 62 F.3d 470 (2nd Cir.1995).

U.S. V. Davis, 332 F.3d 1163 (9th Cir.2003).

A reasonable jury may not infer dominion and control, and thus, constructive possession from petitioner Hardin's physical distance alone,prior to his arrest,which is all the State offered in this case. U.S.V. Jenkins,90 F.3d 814 (3rd Cir.1996).

Due to the fraudulent alternative probable cause prosecution introduces at the suppression hearing" to fall back on"(see:app. exhibit (c) pages 6-7),which defense counsel never objected to, mentioned or challenged ;it constituted law of the case doctrine.

These doctrines were allowed to justify the violation of Hardin's 4th Amend.constitutional right,inwhich Hardin's imprisonment is the result of perjured testimony used by the State.

Pyle V. State of Kansas, 317 U.S. 213, 63 S.Ct. 177 (U.S. Kan.1942).
Napue V. Illinios, 360 U.S. 264, 79 S.Ct.1173 (1959).

Since the law of the case doctrine directs courts to refrain from re-deciding issues that were resolved earlier in litigation, thus, denying Hardin the full and fair opportunity to present his Fourth Amendment claim in the State Court's

Williams V. Runyon, 130 F.3d 568 (3rd Cir.1997).

Research Group V. Magnesium Elektron, Inc., 123 F.3d 111 (3rd Cir.1997).

Hardin has presented" extraodinary circumstances" in this claim which warrant the Court's departure from law of the case doctrine (plain view & inevitable discovery) since the determination of the earlier decision was clearly erroneous and would create manifest injustice.

McLaughlin V. Rose Tree Media School Dist., 52 F.Supp.2d 484 (E.D.Pa.1999).

As in Hardin's case, federal habeas corpus relief is allowed when a criminal defendant is not allowed to fully present his Fourth Amend. claim in the State Courts because of unanticipated and unforeseeable application of a procedural rule which prevents State Courts consideration of the merits.

Riley V. Gray, 674 F.2d 522 (1982).

However, under the "unreasonable application" clause of U.S.C. 2254 (d) (1), the State Courts decision must be more than incorrect or erroneous, but must be objectively unreasonable.

lockyer V. Andrade, 538 U.S. 63,73,75, 123 S.Ct.1167,1173 (2003).

Williams V. Taylor, 529 U.S. 362,405-06, 120 S.Ct. 1495 (2000).

The essential premise in the courts analysis was the presumption that State Courts take Fourth Amend. claims seriously. For if the State Courts do not adequately address these claims, the benefits associated with collateral review are not "marginal".

Indeed, if the Fourth Amend. claims fall on deaf ears in the State Courts and defendants are then precluded from raising their claims on collateral review, the efficacy of the exclusionary rule in deterring future Fourth Amend. violations would be undermined.

Bostick V. Peters, 3 F.3d 1023 (7th Cir.1993).

Hardin's Fourth Amendment claim has fallen on deaf ears in the State Courts and Hardin now seeks relief of his Fourth Amend. claim through Federal Habeas corpus on the grounds of a constitutional violation of his Fourth Amendment rights for which he has been denied the opportunity for full and fair litigation of his claim at State level.

**14**

II.   **Petitioner was denied his 5th, 6th & 14th Amendment**
      **rights by the use of inadmissible expert testimony.**

---

This claim was first litigated in the direct appeal
(ground two), however, it was not given a full and fair opportunity
to be heard in State Courts due to counsel only arguing the fact
trial court abused it's discretion when it allowed the State
to present testimony from the arresting officer, Detective
Sullivan, in the form of expert opinion. The trial court's
denied Hardin his substantial right to cross examine the detective."
Delaware V. Fensterer, 474 U.S. 15, 106 S.Ct. 292 (1985).

This claim was again litigated during Hardin's postconviction,
ground three. Hardin argues the claim as "Plain Error" resulting
from the expert testimony characterizing Hardin as a "Street
Level Dealer" related to the veracity of Hardin, the prejudicial
opinioned testimony by the State's expert constituted plain
error.

Baptiste V. Government of Virgin Island, 240 F.Supp.2d 381 (2003).

This claim was exhausted on appeal (ground two) in the
Supreme Court, who declined to even consider the merits for
which Hardin appealed the decision of his postconviction.

In the context of establishing the elements of possession
with intent to deliver the Courts have held that, in addition to
possession, packaging and quantity, the State must offer expert
testimony, an admission by the defendant or some other credible
evidence to show that a defendant's activity rises above mere

15

possession.

U.S. V. Boissoneault, 926 F.2d 230 (2nd Cir.1991).

In this case, the State did not present an admission by Hardin nor did it present any credible evidence beyond possession, packaging and quantity to establish intent to deliver. Instead, it relied solely on expert testimony which it offered through Detective Sullivan who was also the arresting officer and key fact witness in this case. Hardin objected to the State's use of the arresting officer to present expert testimony on the ground that it would confuse the jury as to the weight to be accorded the witness,s testimony. (see:app.exhibit F,pages 13-27). Fed.Rūles Evid. Rule 702;28 U.S.C.A.

Baptiste V. Government Of Virgin Island, 240 F.Supp.2d 381 (2003).

Trial Court overruled this objection. (see:app.exhibit F,pg.18). Sullivan,s testimony included facts of the case interspersed with his opinions as to what Hardin intended to do with the drugs that he possessed. (see:app.exhibit F,pages 39-57).

Expert testimony must be reliable, in that it must be based on the methods and procedures of science rather than on subjective belief or unsupported speculation, and the expert must have good grounds for his or her belief.

Fed.Rules Evid. Rule 702; 28 U.S.C.A.

SCHNEIDER EX REL. ESTATE OF SCHNEIDER V. FRIED, 320 F.3d 396 (3rd Cir.2003).

This significantly increased the risk that the jury would overestimate the probative value of the facts relied on by the officer in making the arrest.

16

The Trial Court even acknowledged in this case "that it's probably a cleaner case if we had an independant expert come in" and that "the State often tries cases where they have an independant officer that is not involved with the actual apprehension of the alleged perpetrator give the expert testimony." (see:app.exhibit F,pg.18).

Exposure of a witness motivation in testifying is a proper and important function of a constitutionally protected right of cross-examination. U.S.C.A. Const. Amend.6.

Delaware V. Van Arsdall, 475 U.S. 673, 106 S.Ct. 1431 (1986).

The fact that Sullivan is a police officer already creates a perception that his testimony is "quite credible."

Delaware V. Fensterer, 474 U.S. 15, 106 S.Ct. 292 (1985).

Thus, piling on the label of "expert" to the arresting officers opinion undermines the jury's role of determining whether the officer was correct in making the arrest. No amount of cross examination can compensate for this prejudice.

The expert testimony required in this case should have come from an expert separate from the arresting officer in order to "balance the testimony of the arresting officer, whose bias

toward supporting his arrest could cause an inappropriate advocation of the reliability of the factors that is unsupported by his training and experience."

Fed.Rules Evid.Rule 702; 28 U.S.C.A.

Baptiste V. Government Of Virgin Island, 240 F.Supp.2d 381 (2003).

Delaware V. Van Arsdall, 475 U.S. 673, 106 S.Ct. 1431 (1986).

17

Sullivan testified in the capacity of drug expert when attempting to establish the charge (P.W.I.D.cocaine) for which Hardin was being tried, he introduces bad character to establish Hardin had committed the crime, or had the propensity to commit the crime. Fed. Rules Evid. Rule 404 (a). Washington V. Hofbauer, 228 F.3d 689 (6th Cir.2000).

Federal Rules Of Evidence, Rule 404 (a) **Character evidence generally.**--- Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion,except:

Sullivan testified, "what happens when you're a street level dealer or selling in street level quantities, you will have the one big bag, and take from the big bag and package it into smaller bags, and this is what you sell on the street." (see:app.exhibit F,pg.40).

Sullivan further testified, "I don't believe your client's a kingpin,I think he's a street level dealer and thats what we have here." (see:app.exhibit F,pg.57).

The evidence testimony characterizing Hardin as a "street level dealer," caused unfair prejudice,luring juror's into the belief of bad character, thus, outweighing any probative value.

Washington V. Hofbauer, 228 F.3d 689 (6th Cir.2000).

18

Application of the plain error doctrine is to be used
sparingly and only where the error was sure to have had a
unfair prejudicial impact on the jury's deliberations.

In reviewing for plain error, Court looks for errors
that are obvious or otherwise seriously affect the fairness,
integrity, or public reputation of judicial proceedings.
Baptiste V. Government Of Virgin Island, 240 F.Supp.2d 381 (2003).

The extremely prejudicial impact of the opinioned
testimony given in this case by the expert witness was
compounded by the fact that the expert was also the arresting
officer. This officer/expert witness had a stake interest in
the outcome which compromises the reliability of the testimony
for the truth.

This is not a harmless error!
"Plain error" analysis requires case-by-case determination that
includes examining factors such as obviousness of error,
significance of interest protected by rule that was violated,
seriousness of error in particular case, and reputation of
judicial proceedings if error stands uncorrected, all with
eye toward avoiding manifest injustice.
Fed.Rules Cr.Proc. Rule 52 (b), 18 U.S.C.A.
Government Of Virgin Island V. Parrilla,7 F.3d 1097 (3rd Cir.1993).

The expert testifying that Hardin is a "street level dealer"

constitutes plain error. Thus, it was an abuse of the Court's

discretion to allow this key fact witness whom was also the

arresting officer in this case to testify as the drug expert.

SCHNEIDER EX REL.ESTATE OF SCHNEIDER V. FRIED,320 F.3d 396

(3rd Cir.2003).

Hardin respectfully request that the conviction be

reversed under "plain error."

Fed.Rules Cr.Proc. Rule 52 (b), 18 U.S.C.A.

III.    Petitioner's Fifth & Fourteenth Amendment rights were
        violated when the State failed to prove beyond a reasonable
        doubt the elements of the offenses charged.

This claim was addressed in grounds three and four of petitioner's
direct appeal. Petitioner also litigates this claim in greater detail
in grounds four,five and eight of his postconviction. Finally, this
claim was exhausted in ground three on appeal in Supreme Court of
Superior Court's ruling of petitioner's postconviction, Case No.
444,2005.

In appropriate cases, principles of comity and finality must
yield to imperative of correcting fundamentally unjust incarceration,
but victims of fundamental miscarriage of justice are required to
meet cause-and-prejudice standard, and not mere "plain error" standard.

Due process clause does not mandate that, when state treats
absence of affirmative defense as "element" of crime for one purpose,
it must do so for all purposes.

U.S.C.A. Const. Amends.5,14.

Engle V. Isaac,456 U.S. 107, 102 S.Ct. 1558(1982).

This claim was not given a full and fair opportunity to be heard
in the State Court's, for which petitioner now seeks relief of these
constitutional violations through Federal habeas corpus.

Guilt must be proved and not conjectured, and the reasonable
inferences of guilt must be based on facts and conditions proved
and cannot rest solely on suspicion or surmise as Hardin's conviction
was.

Petitioner Hardin claims prosecution's case against him was
extremely weak in which prosecutor and arresting officers did
whatever it took to convict Hardin of the offenses charged.

The prosecution in this case,Andrew Vella, not only failed
to take remedial measures to mitigate the damaging effects of
the :arresting officers and drug expert's perjured testimony but
aided in the obstruction of justice through knowing use of the
perjured testimony, suppression of exculpatory evidence,
fabrication of inculpatory evidence and misrepresented the evidence
to secure Hardin's conviction. U.S.C.A. Const. Amends.5,14.
Lambert V. Blackwell,962 F.Supp.1521 (E.D. Pa.1997).

Petitioner claims that due to him not being informed or
afforded the right to be heard and to offer testimony at the
suppression hearing it caused a breakdown in the adversarial
process allowing the State's case to go unchallenged.

In U.S. V. Leggett,district court generally has no duty to
inquire whether defendant knowingly,voluntarily and intelligently
waived his right to testify.

As long as it is clear that defense counsel has informed
the defendant of the right to testify and the defendant under-
stands that right, a district court has no reason to intervene
by having colloquy with defendant.
U.S. V.Leggett,162 F.3d 237 (3rd Cir.1998).

22

Petitioner claims his U.S.C.A. Amendments 5 & 14 were violated when he was deprived of liberty without due process of law, equal protection of the law and the right to a fair trial when not informed or afforded the right to be heard and offer testimony at the suppression hearing, nor did Hardin knowingly, voluntarily, or intelligently waive his right to testify.

The right to testify is personal and can only be waived by the defendant, not defense counsel. U.S.C.A. Const-Amends. 5,14.

Hardin's summary of what happened is as follows: Before officers arrival Hardin had been sitting in a chair on his home's front porch when realizing he had no light for his cigarette, Hardin noticing the windows down on a family members newly purchased vehicle, walks over to use the vehicle's cigarette lighter.

Hardin admits to opening the drivers side door to reach in to use the cigarette lighter, but never being inside the vehicle. When Hardin shuts the drivers side door he notices what looks like the "Jump-out Squad's" vehicle driving up 4th street, past the 300 block of North Rodney street (app. exhibit F, pg.30), at which time Hardin walks back and sits in his chair. Moments later, after officers circle the perimeter, Hardin is located and immediately arrested on his property

23

(306 N. Rodney St.) without explanation, warrants or probable cause. (see:app.exhibits (b) pg.6, (c) pg.14, (f) pg.31).

The search of Hardin's person netted seven very small zip-lock bags of crack cocaine (see:app.exhibit f,pages38-39),which at a combined weight was less than one gram 0.97. (see:app.exhibit f, pages 64-65).

After Hardin's illegally arrested on his porch property two of the three officers (Sullivan,Freebery) involved in this case walked over to the vehicle where Hardin was seen in proximity of prior to his arrest and conducted a warrantless vehicle search. (see:app.exhibit C,pg.15).

Chimel V. CA., 395 U.S. 752,760 (1969).

The vehicle's search cannot be justified as search incident to arrest when there were no circumstances that warranted the vehicle's intrusion.

U.S. V. Myers, 308 F3d 251 (3rd Cir.2002).

There were no keys of any sort found on Hardin's person (see:app.exhibit B,pg.6),officers gained entry through the vehicle's open windows. (see:app.exhibit C,pg.58).

The vehicle's search is where three of the four charges (trafficking cocaine,possession of marijuana,maintaining a vehicle) in which Hardin was convicted were obtained.

Sullivan was the first officer to the vehicle.(see:exhibit C,pg.30). Sullivan testified when specifically asked," was Hardin seen touching the particular bag under the sunvisor,I did not see him touch it,no." (see:app.exhibit F,pg.53).

24

There were no fingerprints recovered from the drugs obtained
from the vehicle's search. (see:app.exhibit F,pg.53). Sullivan also
testified,it's possible someone else could have put it there. (see:
app.exhibit F,pg.53).

Furthermore, it is a requirement anytime a motor vehicle is
involved in a situation in which a police officers assistance is
needed it is required that officers run background checks on the
vehicle as well as it's owner or operator.

Therefore, officers and prosecution were well aware that the
vehicle in which three of the four charges Hardin was convicted of
were obtained from a vehicle which was not registered or insured but
listed as transfer under the owner/last owner's name. (see:app.exhibit
O,pg.5). Officers and prosecution also aware Hardin whom has never
had a driver's license is unable to register a motor vehicle. (see:
app.exhibit O,pages 1-2).

With no legitimate way to connect Hardin to the vehicle in
which the majority of the drugs in this case were found, officers
and prosecution intentionally used misleading and perjured testimony
by the repeated use of names when referring to Hardin as: the operator,
see:app. C,pg.14, his vehicle, see:app.exhibit C,pg.17, the driver
immediately opened the door, got out, see:app.exhibit F,pg.30, is the
driver of the car here today,he is,seated at the defense table,see:
app.exhibit F,pages 30-31, his car (5x), see:app.exhibit F,pages 45-46,
his vehicle,see:app.exhibit F,pg.45,etc.,all of which constituted
a vital link in circumstantial evidence on which Hardin was convicted.

In Miller V. Pate, where a pair of man's undershorts, which were repeatedly described as "bloody shorts" in prosecution for murder of an eight year old girl in a brutal sex attack, constituted a vital link in circumstantial evidence on which defendant was convicted, although prosecution knew at trial that the shorts were stained with paint, deliberate misrepresentation invalidated conviction!

Miller V. Pate, 386 U.S. 1, 87 S. Ct.785 (1967).

Had any of the names used by State's witnesses and prosecution been fact, when referring to Hardin, he'd been charged with driving and motor vehicle violations as well, since never having a driver's license (app.exhibit O, pg.1,2) and the vehicle in question not being registered or insured, but listed as transfer under the owner/last owner's name. (app. exhibit O, pg.5)

Fourteenth Amendment cannot tolerate a State criminal conviction obtained by knowing use of false evidence as Hardin's conviction was. U.S.C.A. Const. Amend. 14.

By State's witnesses and prosecution repeatedly referring to Hardin by the misleading names mentioned above it created a vital link in circumstantial evidence creating the perception that since the vehicle belonged to Hardin, it would be impossible for him not to be knowledgable of the illegal contraband inside "his vehicle". (app.exhibit c-pg.17,f-pg.45).

26

This is not a harmless error! The cause-and-prejudice created by these misleading names are the sole purpose of Hardin's fundamentally unjust incarceration.

Engle V. Isaac, 456 U.S. 107, 102 S. Ct. 1558 (1982).

If false testimony affected or might have affected judgment of jury, then conviction must fall.

Mills V. Scully, 653 F. Supp. 885 (S.D.N.Y. 1987);

Napue V. Illinois, 360 U.S. 264, 79 S. Ct. 1173.

Finally, while Hardin's being processed at the Wilmington Police Dept. (W.P.D), Shakeeta Butler also a resident of the 306 N. Rodney Street home, locates the lead officer (Sullivan) in the case, at the W.P.D. and confesses to the illegal drug/ contraband, found inside the vehicle, explaining when, where, and why she had left them there. (app. exhibit F, pg.57).

This exculpatory evidence was never reported or mentioned in any reports, or at any of Hardin's pre-trial hearings, which Shakeeta Butler attended them all. At the end of Hardin's trial and soon as the confession was mentioned, prosecution objects and defense counsel completely withdraws from this line of questioning. (app. exhibit F, pg.57).

During Hardin's trial the State relied on the expert testimony of detective Sullivan to establish "intent to deliver". (app. exhibit F, pg.12-18). The "intent" element of Hardin's possession with intent to deliver charge, as

27

all his charges and conviction were established and obtained
through knowing use of perjured testimony.

Pyle V. State of Kansas, 317 U.S.213, 63 S. Ct.177 (U.S. Kan.1942).
Napue V. Illinois, 360 U.S.264, 79 S. Ct.1173 (1959).

The courts have held that more than possession, quantity,
and packaging is needed to establish the "intent" element of
possession with intent to deliver.

However, Sullivan's opinion was based solely on packaging,
quantity, and possession and did not point to any other factors
that would support his opinion of Hardin's intent.

U.S. V. Boissoneault, 926 F.2d 230 (2nd Cir. 1991).

Sullivan's testimony was incorporated with false evidence
when attempting to establish the elements of the offenses for
which Hardin was charged. Sullivan constantly refers to the
vehicle and the drugs found there-in as Hardin's.

Sullivan testified, " the packaging of this drug is obvious
to me, that it's for distribution and not for personal use".
(app. exhibit F, pg.39). He then added, "what happens when
you're a street level dealer or selling in street level
quantities, you will have the one big bag and take from the
big bag and package it into smaller bags, and this is what you
sell on the streets." (app. exhibit F, pg.40).

Sullivan then opinioned, " I don't believe your clients'
a Kingpin, I think he's a street-level dealer and that's
what we have here". (app. exhibit F, pg.57)

U.S. V. Boissonealt, 926 F.2d 230 (2nd Cir. 1991).

28

Throughout Sullivan's testimony, when establishing the
" intent" element of Hardin's possession with intent to deliver
charge, Sullivan uses perjured testimony when constantly
referring to the marijuana and the one big bag of cocaine, all
of which is drug contraband obtained from the vehicle's search
which Sullivan knew before trial did not belong to Hardin.
(app. exhibit F, pg.57).

Pyle V. State of Kansas, 317 U.S. 213, 63 S. Ct.177 (U.S. Kan.1942)
Napue V. Illinois, 360 U.S.264, 79 S. Ct.1173 (1959).

The State failed to demonstrate any special relationship
between Hardin and the vehicle, or the drugs found there-in.
U.S. V. Johnson, 952 F.2d 1407 (D.C. Cir. 1992).

In cases where the Court has found sufficient evidence of
intent, there have been other factors involved; including co-
defendant statements, actions by the defendant, sale paraphanalia,
weapons, large sums of money, and destination or place of origin.
No such factors exist in this case.

There was no testimony at trial of any drug sales,
interrupted sales, or even sale-related activity. To the contrary,
Sullivan said he did not observe any illegal activity or behavior
associated with drug dealing. (app. exhibit F, pg.46).

While Sullivan indicated that the packaging and quantity
were consistent with sale purposes, he acknowledged it is possible

for one to have possessed drugs packaged in this manner for
personal use. (app. exhibit F, pg.47-48).

U.S. V. Boissoneault, 926 F.2d 230 (2nd Cir. 1991).

When dealing only with factors of possession, quantity,
and packaging as we are in this case, " guilt of intent to sell
is not the only reasonable hypothesis to be drawn from, the
possession of quantities here involved".

U.S. V. Boissoneault, 926 F.2d 230 (2nd Cir.1991).

While Sullivan acknowledged there are many other variables
involved in determining if one is a dealer, he did not offer any
in this case. Quite candidly, the expert admitted, " what I
have is what I have is what you see today". (id). (app. exhibit F,
pg.57).

U.S. V. Boissoneault, 926 F.2d 230 (2nd Cir. 1991).

Because there was insufficient evidence to support the
opinion offered by Sullivan, the State failed to establish beyond
a reasonable doubt the "element" of intent to deliver, Hardin
makes a motion for judgment of acquittal on the possession with
intent to deliver charge. (app. exhibit F, pg.89). Hardin's
judgment of acquittal on the P.W.I.D. charge was denied.
(app. exhibit F, pg.95).

U.S. V. Johnson, 952 F.2d 1407 (D.C. Cir. 1992); U.S V. Skipper,
74 F.3d 608 (5th Cir. 1996); U.S. V. Mohammed, 138 F. Supp. 2d.
305 (N.D.N.Y. 2001); U.S. V. Iafelice, 978 F.2d 92,96 (3rd
Cir.1992).

Hardin was arrested with twenty-three dollars on his person. (app. exhibit B, pg.6). There was no sales paraphenalia (app. exhibit F, pg.42), nothing to support the drug expert's testimony of Hardin's intent to deliver.

The evidence presented in Hardin's case did not support his conviction for possession of cocaine with intent to deliver, despite expert testimony that amount of cocaine and manner in which it was divided when taken was consistent with street-level distribution, for which, Hardin seeks reversal of the possession with intent to deliver cocaine.

U.S. V. Boissoneault, 926 F.2d 230 (2nd Cir. 1991).

Testimony indicates that Hardin was found in possession of about 10 grams of cocaine and a small amount of marijuana. (app. exhibit F, pg.41). However, Hardin was arrested on his homes property (app. exhibit F, pg.31-32), with only seven very small bags of cocaine on his person and no marijuana. (app. exhibit F, pg.46-47). The seven bags of cocaine found on Hardin, had a combined weight of less than one gram (0.97.).
(app. exhibit F, pg.64-65).

The majority of cocaine for which Hardin's trafficking charge was obtained and the marijuana Hardin was charged with, are both results of evidence obtained from the vehicle's search. (app. exhibit F, pg.32-34, pg.47).

The trafficking charge Hardin was convicted of was to be established through the constructive possession theory,which

the State failed to demonstrate any type of relationship between Hardin and the vehicle or the drugs found there-in.

In U.S. V. Johnson, evidence that defendant was present in apartment which belonged to another and which contained drugs and a gun, and that defendant had $127 on his person when arrested, was insufficient to support convictions of distribution of cocaine base or use of firearm in connection with drug trafficking crime, in as much,as Government failed to demonstrate any special relationship between defendant and apartment lessee that might have linked defendant to drugs and gun found in apartment, and defendant's possession of $127 was insufficient evidence of involvement in drug trafficking. U.S. V. Johnson, 952 F.2d 1407 (D.C. Cir.1992).

In this case the only evidence State offers connecting Hardin to the vehicle in which the majority of drugs in this case were found is misleading names when referring to Hardin as; the vehicle's owner, operator, his car, etc., and officer's testimony to seeing Hardin exit the vehicle, prior to his arrest, which Hardin claims to be conjectured by arresting officers, since observing Hardin closing the driver's side door (after lighting cigarette) the same time officers drove past. (app. exhibit F, pg.30).

However, dominion and control sufficient to establish constructive possession of drugs are not established by mere proximity to drugs, or mere presence on property where they are located, or by mere association with person who controls drugs or property.

U.S. V. Jenkins, 90 F.3d 814 (3rd Cir. 1996).

The evidence presented in this case was insufficient to establish that Hardin had dominion and control of the vehicle, and thus, constructive possession of the cocaine and marijuana found inside the vehicle. Nothing but testimony of Hardin being seen in proximity to the vehicle, linked him to the car or the drugs found there-in, no cocaine residue was found on Hardin, he was never seen touching the drugs, nor were his fingerprints found on the drugs. (app. exhibit F, pg.53).

U.S. V. Jenkins, 90 F.3d 814 (3rd Cir. 1996).

The jury in Hardin's case inferred dominion and control, and thus, constructive possession from his physical distance from drugs alone.

However, a reasonable jury may not infer dominion and control, and thus, constructive possession from defendant's physical distance from drugs alone.

U.S. V. Jenkins, 90 F.3d 814 (3rd Cir. 1996).

Hardin has never had a driver's license (app. exhibit O, pg.1, 2), thus, unable to register or legally operate a motor vehicle. Had he been the driver or operator of the vehicle as constantly referred to by State's witnesses and prosecution; why was Hardin not given any driving or motor vehicle violations? If the vehicle in which the majority of drugs in this case were found, belonged to Hardin as state's witnesses testimony would lead one to beleive, why was the vehicle never seized?
(app. exhibits B-pg.6, F-pg.53).

Therefore, the State relied on the perjured and misleading testimony of it's witnesses to create a vital link in circumstantial evidence on which Hardin was convicted.

Miller V. Pate, 386 U.S. 1,87 S. Ct.785 (1967).

Hardin states he was unaware of the illegal drug contraband inside the vehicle, since it wasn't his, and the State offered no evidence linking Hardin to the vehicle or the drugs found there-in.

In U.S. V. Valdez, there was insufficient evidence that defendant knowingly possessed cocaine found in car he was driving to support his conviction.

U.S. V. Valdez, 859 F. Supp. 1235 (S.D. Iowa 1994)., U.S. V. Wexler, 838 F.3d 88 (3rd Cir. 1988).

34

In this case, the State relied on the use of misleading and perjured testimony of the State's witnesses (arresting officers) to create a vital link in circumstantial evidence to obtain Hardin's conviction and from deliberate suppression by the same authorities of evidence favorable to him.

Pyle V. State of Kansas, 317 U.S. 213, 63 S.Ct. 177 (U.S. Kan.1942).
Napue V. Illinios, 360 U.S. 264, 79 S.Ct.1173 (1959).

The "plain view" & inevitable discovery doctrines allowed to justify the illegal arrest of Hardin are in error due to the evidence presented in this claim.

Hardin has never had a driver's license (see:app.exhibit O,pages 1-2), therefore, unable to register a motor vehicle. The vehicle was not insured or registered but listed as transfer under the owner/last owner's name. (see:app.exhibit O,pg.5). Hardin did not have any keys in his possession. (see:app.exhibit B,pg.6). Hardin was not in the vehicle's proximity when arrested only seen leaving (exiting) it's proximity prior to his arrest.(see:app.exhibit C,pg.14).

Nothing linked Hardin to the vehicle or the drugs found therein, therefore, it is not inevitable that the illegal drug contraband contained inside would have been discovered by lawful means.

U.S. V. Cabassa, 62 F.3d 470 (2nd Cir.1995).
U.S. V.Davis, 332 F.3d 1163 (9th Cir.2003).

Furthermore, there were no circumstances that justified the warrantless intrusion of the parked vehicle.

U.S. V. Myers, 308 F.3d 251 (3rd Cir.2002).

An officers mistaken belief as to the law, even if reasonable cannot establish apparent authority to conduct a search of anothers property. U.S.C.A. Const. Amend.4.

35

Hardin claims had his arrest been legal he should have only been charged with possession of the seven small bags of crack cocaine found on his person (app.exhibit f,pg.38-39) and not, the other stuff in the car. (app.exhibit f,pg.47).

The due process clause protects an accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged. ReWinship,397 U.S. 358, 90 S.Ct. 1068(1970).

Sullivan V. Louisiana, 508 U.S. 273, 113 S.Ct.2078 (1993).

Hardin was convicted of four charges. As previously stated,three of the four charges (trafficking cocaine,possession of marijuana, maintaining a vehicle) were obtained from a vehicle arresting officers and prosecution knew before any of the court proceedings did not belong to Hardin nor could they link to him,thus, the state relied on the misleading and perjured testimony of the arresting officers, who s testimony created a vital link in circumstantial evidence on which Hardin was convicted.

The information concerning Hardin,the fact he s never had a driver s license (app.exhibit o,pg.1,2), thus,unable to register or operate a motor vehicle. The fact the vehicle was not registered or insured, but listed as transfer under the owner/last owner s name (app.exhibit o,pg.5), compounded with the fact a confession was made to the drugs found inside the vehicle  (app.exhibit f,pg.57), is material to Hardin s defense.

36

To state a valid Brady claim, Hardin must and has shown that the evidence was (1) supressed, (2) favorable,and (3) material to his defense, which if disclosed there is a reasonable probability that the outcome would have been different, therefore, depriving Hardin of a fair trial.

Brady V. Maryland, 373 U.S. 85, 83 S.Ct. 1194

Prosecutor's lack of knowledge does not render information unknown for Brady purposes, where the prosecution has not sought out information readily available to it. U.S.C.A. Const. Amends.5,14. U.S. V. Perdomo, 929 F.2d 967 (3rd Cir.1991).

Carter V. Rafferty, 826 F.2d 1299(3rd Cir.1987).

Materiality of evidence under Brady requirement that prosecution not withhold evidence that is favorable to accused and material to guilt or punishment is mixed question of law and fact, and State Court determinations of law portions of this mixture are not entitled to presumption of correctness under habeas corpus governing statue.   U.S.C.A. Const. Amends.5,14; 28 U.S.C.A. § 2254 (d).

Carter V. Rafferty, 826 F.2d 1299 (3rd Cir.1987).

Hardin has presented overwhelming evidence supporting his claim that there was insufficient evidence to sustain his conviction of the trafficking charge, possession of marijuana charge and the maintaining a vehicle charge,all of which were obtained from a vehicle the State knew did not belong to Hardin.

Hardin has presented extraodinary circumstances in this claim which warrant the Court's departure from law of the case doctrine (plain view & inevitable discovery) since the determination of the earlier decision was clearly erroneous and would create manifest injustice. Hardin respectfully ask the Court's to reverse and vacate the convictions of the above mentioned charges (trafficking cocaine, possession of marijuana, maintaining a vehicle) obtained from the vehicle for all the above mentioned reasons.

McLaughlin V. Rose Tree Media School Dist.,52 F.Supp.2d 484 (E.D.Pa.1999).

Petitioner (Hardin) now brings this constitutional claim to Federal Court after state procedural default, and has demonstrated cause and actual prejudice for which he now seeks relief.

28 U.S.C.A. § 2254,2254(a,b).

U.S.C.A. Const. Amends.5,14.

IIII.    Petitioner was denied his Sixth Amendment right to be
         confronted with the witnesses against him, to have
         compulsory process for obtaining witnesses in his favor
         and to have the assistance of counsel.
_____

Claim four is petitioner's ineffective assistance claim.
In respondents answer to the petition for writ of habeas corpus
respondents state petitioner (Hardin) argues a confrontation clause
in claim four.

The respondents answer claim four as a confrontation issue,
when the confrontation issue was just one of many circumstances
inwhich petitioner demonstrates how defense counsel was ineffective.
Respondents state, "Hardin did not raise this claim on direct appeal
of his conviction or in his motion for postconviction relief."
Therefore he has not properly exhausted this claim.

Again, petitioner's claim four is an ineffective assistance claim.
This claim was not raised on direct appeal of Hardin's conviction
since claims of ineffective assistance of counsel cannot be raised
on direct appeal.see:Supreme Court Rule 8,citing Robinson V. State,
305 A.2d 307 (Del.1973).

The confrontation clause was litigated in ground nine of Hardin's
postconviction through his ineffective claim and again litigated
in ground four on appeal of his postconviction.

Thus, Hardin's ineffective assistance claim has been properly
exhausted and the respondents failed to answer to claim four in
there answer for writ of habeas corpus.

39

A claim of ineffective assistance of counsel constitutes "cause" if it is the actual cause of a procedural default. Johnson V. Ellingsworth, 783 F.Supp. 215 (D.Del.1992).

With this in mind, the petitioner will proceed to demonstrate that his counsels performance fell below a reasonably objective standard, and that, but for counsels unprofessional errors the outcome of the criminal proceedings would have been different, thus denying him the constitutional rights of the Sixth Amendment. Strickland V. Washington, 466 U.S. 668 (1984).

Petitioner s problems began from the very outset of this case, when he was assigned multiple public defenders within a very short period of time, each more detached from the case than the previous.

The first public defender assigned was Katheryn Van Amerongen. During several visits to her office, Hardin was accompanied by another resident of the 306 N. Rodney St. home, Shakeeta Butler. (Hereafter - Butler).

Hardin and Butler informed Amerongen of all the details surrounding Hardin s unlawful search and seizure, as well as, Butler s confession to the drugs found inside the vehicle she had been taken to the hospital in prior to Hardin s arrest.

Counsel could have easily verified Butler s claims with a simple phone call to St. Francis hospital. Additionally, Amerongen failed to obtain a statement from Butler of the confession she made to arresting officer Sullivan. Amerongen informed Hardin and Butler that there was a solid claim of illegal search and seizure, and subsequently files a suppression motion, which was scheduled for January 10, 2003.

On January 10,2003,upon arriving at the courthouse, Hardin accompanied with Butler is then informed that he has been assigned a new public defender because, Amerongen is now working for the prosecution team. Hardin was never informed the exact level of Amerongen's involvement in the prosecution of his case, only that Amerongen had all the work-product associated with the case, thus, causing a direct conflict of interest.

Hardin had attempted on more than one occassion to determine Amerongen's level of involvement in the prosecution of his case, but no information was ever forthcoming. (app. exhibit P,pg.1,2).

Apparent that Amerongen handled sensitive information regarding Hardin's defense strategy, because she was allowed to recuse herself.

It is settled law that conflicts arise when there has been shared or overheard conversation, harmful or prejudicial involvement by opposing counsel, particularly in a criminal case. Hess V. Mazurliewicz,135 F.3d 905 (3rd Cir.1998).

Unfortunately, for Hardin and causing even further conflict with his defense, Judge Richard R. Cooch, whom decided over Amerongen's request to recuse herself (app.exhibit AA,pg.2), also presided over Hardin's suppression hearing.

At the time of Hardin's suppression hearing he was unaware of the conflict with the presiding Judge, whom, having harmful and prejudicial knowledge of inside facts concerning Hardin's

41

case, causing Judge Cooch to have a premeditated conclusion of Hardin's suppression hearing before deliberation of all the facts.

Through litigation of this claim Hardin will show evidence and mitigating factors that contradict Judge Cooch's initial decision of the suppression hearing, thus,questioning his impartiality.

IN-RE-KENSINGTON INTERN.LTD.,368 F.289 (3rd Cir.2004).

Hardin accompanied with Butler speaks to his second and newly appointed defense counsel (Bradley Manning) for the first time approximately a half hour before Hardin's suppression hearing is due to start.

Hardin informs Manning of the existing conflict already manifested by the public defenders office,and that an attorney should have been appointed.

Hardin and Butler had to rehash all of the events to the substitute counsel in a very brief period of time.

However, when specifically asked by the Court, "would any further time discussing this case with your client be productive," defense counsel informs the Court, "he's become thoroughly apprised of the facts of the case and he's prepared to go forward." (app.exhibit c,pg.4-5).

This blunder constituted second defense counsel's first display of incompetence ,which prosecution took complete advantage and control of.

42

Hardin's suppression hearing was scheduled in an attempt to
have the evidence in this case suppressed as it was the result of
two separate yet consecutive unlawful searches which yielded
evidence that should have been supressed.

Hardin's arrest took place first on his homes porch property
( see:app.exhibit C,pages 14-15), followed by a vehicle search.

The evidence presented in this case shows a criminal informant's
tip to be the cause of what initiates officers to pursue Hardin.
( see: app.exhibit C, pg.10).

However,while all three officers were in the same vehicle when
Sullivan alone alleges to have received the tip (see:app.exhibit C,pg.10),
suspiciously, the other two officers (Chickadel & Freebery) in the
same vehicle when the tip was received were not privy to this
information. ( see:app.exhibit C,pages 43/53).

There were inconsistencies in officers testimony, when specifically
asked, "by what manner was the informant's tip received" (see:app.
exhibit C,pages 18/41), causing any reasonable person to doubt an
informer ever existed.

Sixth Amendment guarantees criminal defendants a meaningful
opportunity to present a complete defense. U.S.C.A. Const. Amend.6.
Chia V. Cambra, 360 F.3d 997 (9th Cir.2004).

When ones liberty is at stake,counsel owes a greater duty than
to simply accept hearsay statement.
Eldrige V. Atkins, 665 F.2d 228 (1981).

Despite inconsistencies in officers testimony concerning informant,counsel was ineffective in failing to seek his/her identity to confirm an informant did in-fact exist or to determine if his/her testimony would be credible.

Gochicoa V. Johnson, 53 F.Supp.2d 943 (W.D.Tex.1999); U.S. V. Hurse, 453 F.2d 128 (C.A.8 Mo.1971);Aguilar V. State of Texas, 378 U.S. 108, 84 S.Ct. 1509 (U.S.Tex.1964).

Furthermore, when officers testified about what the alleged informer said, it amounted to illegal hearsay evidence, denying Hardin the right to confrontation. (see:app.exhibits(B)pg.6,(C)pg.10,23.

The confrontation clause provides the right of an accused to confront and cross examine witnesses against him which applies not only to in-court testimony, but also out-of-court statements introduced at trial, regardless of admissibility of statements under laws of evidence. U.S.C.A. Const. Amend. 6.
Crawford V. Washington, 124 S.Ct. 1354 (2004).

Counsel was ineffective in denying Hardin the right to be confronted with the witnesses against him.

Prosecution aware the tip provided by the informant may not serve as sufficient probable cause to justify Hardin's warrantless arrest while on his homes property, since the arresting officers themselves observed no illegal or suspicious behavior (see:app. exhibit F,pages 46,77,83) or that there might not even be an informant.

44

Therefore,at the opening of the suppression hearing prosecution intentionally falsified information and manufactured evidence reciting his own version of events and introducing into the record an alternative probable cause" to fall back on," as he blatantly admits (see:app.exhibit C,pages 6-7),introducing the plain view and inevitable discovery doctrines,as justification for Hardin's illegal search and seizure.

The doctrines allowed to justify the violation of Hardin's Fourth Amend. rights were obtained from a vehicle search which took place after Hardin was already arrested. (see:app.exhibit C,pages 14-15).

The inevitable discovery doctrine allows evidence procured as result of illegal search to be introduced if prosecution can establish by preponderance of evidence that information ultimately or inevitably would have been discovered by lawful means. U.S.C.A. Const. Amend.4.
U.S. V. Cabassa, 62 F.3d 470 (2nd Cir.1995).
U.S. V. Davis, 332 F.3d 1163 (9th Cir.2003).

Defense counsel was constitutionally deficient when failing to object or challenge the inevitable discovery doctrine which is in error for multiple reasons (1), Hardin was arrested on his homes property before the vehicle search, which is where the inevitable discovery doctrine was obtained (2),since Hardin was not in the vehicle's proximity when arrested there were no circumstances that justified the parked vehicle's warrantless intrusion (see:app.exhibit C,pg.14) and (3), Hardin has never admitted to the vehicle or the drugs found therein as being his.

45

(4) Hardin has never had a driver's license, therefore,unable to register or operate a motor vehicle (see:app.exhibit O,pages 1-2), and (5), the vehicle containing the illegal drug contraband was not registered or insured but listed as transfer under the owner/last owner's name. ( see: app.exhibit O,pg.5).

The Court assumed Hardin to have dominion and control of the vehicle because of the misleading names used by prosecution and it's witnesses when referring to Hardin as; the operator (see: app.exhibit C,pg.14), his vehicle, (see: app.exhibit C,pg.17),etc., this extremely prejudicial and misleading testimony was compounded with officers testifying to there assumption that Hardin had just exited the vehicle, because they had seen him shutting the driver's side door prior to there arrival, all of which constituted a vital link in circumstantial evidence.

Counsel was ineffective by failing to object to the State's underhanded tactics when constantly referring to Hardin as; driver of the vehicle, the owner, the operator,etc.

All of this was a blatant distortion of facts which went completely unchallenged by counsel, therefore, it constituted a vital link in circumstantial evidence between Hardin and the vehicle where majority of the drugs in this case were found.

Miller V. Pate, 386 U.S. 1, 87 S. Ct. 785 (1967).

Counsel was ineffective for failing to object to the introduction of the (plain view & inevitable discovery) doctrines not included in the original written affidavit of probable cause.

U.S. V. Williams, 3 F.3d 69 (3rd Cir.1993).

U.S. V. Whitner, 219 F.3d 289 (3rd Cir.2000).

46

Simple investigations would have substantiated Hardin's claim that the vehicle inwhich the majority of drugs found in this case did not belong to Hardin.

Counsel failed to challenge the fact that aside from State's witnesses testimony to seeing Hardin in the vehicle's proximity prior to his arrest, the State never established a nexus between Hardin and the vehicle in question.

Hardin had informed counsel of all the above facts before the suppression hearing started. Counsel was ineffective in failing to request a continuance to conduct pre-trial investigations with the Department of Motor Vehicle, had counsel done so these facts would of been substatiated before Hardin's conviction of illegal drugs obtained from a vehicle not belonging to him.

U.S. V. Gray, 878 F.2d 702 (3rd Cir.1989).

Furthermore, Butler immediately after hearing of Hardin's arrest went to the Wilmington Police Dept. and located the arresting officer (Sullivan) in this case and confesses to the drugs found in the vehicle as being hers.

This confession was never reported or mentioned until Hardin's trial. (see:app.exhibit F,pg.57).

Butler personally informs all of Hardin's defense counsels of the facts surrounding her confession for which she attended all of Hardin's court appearances and willing to testify to the confession she made to the arresting officer at the W.P.D.

Hardin was denied his right to compulsory process for obtaining witnesses in his favor when counsel failed to call Butler to testify, nor did counsel obtain an affidavit of the confession,by counsel's failure to request a continuance is unable to investigate Butler's confession.

U.S. V. Gray, 878 F.2d 702 (3rd Cir.1989).

Counsel's performance fell below the standard of reasonableness, when failing to mention or allow exculpatory witness Butler to testify on Hardin's behalf.

To constitute effective representation, counsel need not attain perfection, but must exercise reasonable diligence to produce exculpatory evidence.

Eldridge V. Atkins, 665 F.2d 228 (1981).

Hardin's case factually similar to Sander's where, second attorney Bradley Manning despite being aware of Butler's out-of court confession to Sullivan, however,chose not to call Butler to testify or introduce statement and,instead pursued a weaker defense, with a result that jury has convicted Hardin of three charges obtained from a vehicle not belonging to him.

U.S.C.A. Const. Amends.5,6 & 14.

Sander s V. Ratelle, 21 F.3d 1446 (9th Cir.1994).

Hardin claims defense counsel was constitutionally deficient when not informing or affording Hardin the right to be heard and to offer testimony at the suppression hearing causing a breakdown in the adversarial process allowing the State's case to go unchallenged.

48

In U.S. V. Leggett, district court generally has no duty to inquire whether defendant knowingly, voluntarily and intelligently waived his right to testify.

As long as it is clear that defense counsel has informed the defendant of the right to testify and the defendant understands that right, a district court has no reason to intervene by having colloquy with defendant.

U.S. V. Leggett, 162 F.3d 237 (3rd Cir.1998).

Hardin claims his U.S.C.A. Amendments 5 & 14 were violated when he was deprived of liberty without due process of law, equal protection of the law and the right to a fair trial when not informed or afforded the right to be heard and to offer testimony at the suppression hearing. Hardin states he did not knowingly, voluntarily or intelligently waive his right to testify.

The right to testify is personal and can only be waived by the defendant, not defense counsel.

U.S.C.A. Const. Amends. 5 & 14.

On the basis of a cold record, it may be impossible for a reviewing court to confidently ascertain how the governments case would have stood up against rebuttal and cross-examination by a shrewd, well prepared lawyer. The difficulties of estimating prejudice after the fact are exacerbated by the fact that the evidence of injury are missing from the record precisely because of the incompetence of counsel. Strickland V. Washington, 466 U.S. 668, 104 S.Ct. 2052 (1984), (Justice Marshal, dissenting).

49

Though each individual error or mistake in strategy may not be egregious enough to label attorney incompetent,sum of altogether may be.

The cumulalative effect of errors from defense counsels constitutionally deficient performance at the suppression hearing when after meeting client/petitioner for the first time approximately a half hour before suppression hearing is due to start and hearing several plausible lines of defense in petitioner's behalf, mitigating and exculpatory (as previously shown), defense counsel failed to request a continuance,thus unable to adequately prepare and present a defense,conduct pretrial interviews and investigations. Strickland V. Washington, 466 U.S. 668,104 S.Ct. 2052 (1984). U.S. V. Gray, 878 F.2d 702 (3rd Cir.1989).

The cause and prejudice resulted from counsels deficient performance was so extreme when failing to object to prosecution's introduction of an alternative and fraudulent probable cause (plain view & inevitable discovery) which is in error for multiple reasons as previously shown, it allowed the evidence procured from two separate yet consecutive unlawful searches to be introduced having a cumulative effect also serving as justification for the illegal arrest of Hardin.

As stated in the opening of this claim petitioner alleges a conflict of interest to have arose after the presiding judge of the suppression hearing received inside knowledge of harmful and prejudicial information concerning petitioner's case from the first defense counsel (Katheryn Van Amerongen) in an attempt to recuse herself (see:app.exhibits (AA)D.I.15pages 2-3, exhibit (P) pages 1-2),

thus, questioning the presiding judge's impartiality.
IN RE KENSINGTON INTERN.LTD., 368 F.3d 289 (3rd Cir.2004).

The "inevitable discovery doctrine" inwhich prosecution introduces at the suppression hearing and the presiding judge allowed to justify the warrantless arrest of Hardin was obtained from a vehicle not belonging to Hardin.

As a requirement for the inevitable discovery exception to the exclusionary rule to apply prosecution must first establish by preponderance of evidence that information ultimately or inevitably would have been discovered by lawful means. U.S.C.A. Const. Amend. 4.

It is also required anytime a motor vehicle is involved in a situation in which a police officers assistance is needed, officers must run background checks on the vehicle as well as it's owner or operator.

Therefore, officers and prosecution were well aware Hardin has never had a driver's license, thus, unable to register or operate a motor vehicle. (see:app.exhibit (O)pages 1-2). The vehicle in which the inevitable discovery doctrine was obtained was not registered or insured but listed as transfer under the owner/last owner's name. (see:app.exhibit O,pg.5). The vehicle in which the majority of drugs in this case were found was not seized. (see:app. exhibit f,pg.53). Hardin never testified at any of the court proceedings nor did he ever make any statements in court or out-of-court claiming the vehicle or the drugs found therein as being his.

Prosecution unable to establish by preponderance of evidence
that the illegal drug contraband contained inside a vehicle not
belonging to Hardin ultimately or inevitably would have been
discovered by lawful means, therefore, he never made an attempt
which the court overlooked.

Despite the mitigating and exculpatory evidence just mentioned
it would be contrary to law for the presiding judge to allow the
" inevitable discovery" to justify the illegal arrest of Hardin's
person.

However, the "plain view & inevitable discovery doctrines" were
allowed to justify the illegal arrest of Hardin's person. The motion
to suppress evidence obtained in violation of Hardin's Fourth
Amendment right was denied, thus questioning the suppression hearing
judge's impartiality.

IN RE KENSINGTON INTERN.LTD. 368 F.3d 289 (3rd Cir.2004).

There was no reasonable basis that justify counsel failing
to adequately argue motion to supress evidence that was obtained
in violation of Hardin's Fourth Amendment right.

Martin V. Maxey, 98 F.3d 844 (5th Cir.1996).

Counsel's performance was so inadequate it undermined the
proper functioning of the adversarial process,the cause and prejudice
resulted in not only the loss of petitioner's suppression hearing
but vitiating petitioner's entire case when failing to object to
the introduction of an alternative and fraudulent probable cause
(plain view & inevitable discovery), it constituted law of the case
doctrine,thus,allowing the fruits from two separate unlawful searches
to be introduced into trial court.

52

After the loss of Hardin's suppression hearing, while out on bail he's contacted and informed he's been assigned a third public defender (Nicole Walker) from the same office as the previous two counsels, at which time counsel schedules a walk-in appointment for Hardin.

Representation of a criminal defendant entails basic rights that cannot be side stepped or ignored. One of those guarantees is the right to conflict free counsel.

Cuyler V. Sullivan, 446 U.S. 335 (1980).

U.S. V. GREIG, 967 F.2d 1018 (5th Cir.1992).

Hardin had several walk-in appointments with his third defense counsel (Nicole Walker) before trial.

Each time Hardin visits counsel he's accompanied by another resident of the 306 N.Rodney St. home, Shakeeta Butler.

Counsel's thoroughly informed by Hardin and Butler of all the misfortunes that had transpired on the day in question (9-13-02), before and after Hardin's arrest.

Hardin informed counsel that Jerry Butler was privy to all the events that had transpired during the day in question. The list goes on of witnesses who would have testified on Haridn's behalf. (see: app.exhibit D,pages 1-4).

Hardin's trial date was scheduled for April 10,2003. (see:app. exhibit (AA) D.I.23pg.3).

In an attempt to have all his witnesses present Hardin was at most five minutes late due to him being sent to the wrong courtroom, a capias was issued and his bail revoked. (see:app.exhibit (AA) D.I. 25 pg.3).

53

Hardin's trial was re-scheduled for May 28,2003. Though there may be unusual cases when attorney can make rational decision that investigation is unnecessary, generally, attorney must investigate case in order to provide minimally competent professional representation. CRISP V. DUCKWORTH, 743 F.2d 580 (1984).

Defense counsel fails to conduct any pre-trial investigations and only interviews one witness (Shakeeta Butler) of Hardin's. Two of the four names Hardin gave as witnesses that were subpoenaed for the first trial were not subpoenaed a second time for the re-scheduled trial. (see:app.exhibit E,pages 1-2).

U.S. V. Gray, 878 F.2d 702 (3rd Cir.1989).

Strickland V. Washington, 466 U.S. 668 (1984).

Trial counsel was ineffective for failing to object to the admission of illegally seized evidence.

UNITED STATES EX REL. HENDERSON V. BRIERLEY, 300 F.Supp.638 (1969).

Morrison V. Kimmelman, 650 F.Supp.801 (D.N.J.1986).

Counsel was informed of the inconsistencies in officers testimony at the suppression hearing concerning how the alleged informers tip was received. (see:app.exhibit C,pages 18/41).

Despite inconsistencies in officers testimony concerning informant, when ones liberty is at stake, counsel owes a greater duty than to simply accept hearsay statement. Counsel was ineffective in failing to seek his/her identity to confirm an informant did in-fact exist or to determine if his/her testimony would be credible.

Gochicoa V. Johnson, 53 F.Supp.2d 943 (W.D.Tex.1999); U.S. V. Hurse, 453 F.2d 128(C.A.Mo.1971); Aguilar V. State of Texas, 378 U.S. 108,

84 S.Ct. 1509 U.S.Tex.1964).

Furthermore, when officers testified about what the alleged informer said, it amounted to illegal hearsay evidence, denying Hardin the right to confrontation. (see:app.exhibits (B)pg.6, (C)pages 10,23).

The confrontation clause provides the right of an accused to confront and cross examine witnesses against him which applies not only to in-court testimony, but also out-of-court statements introduced at trial,regardless of admissibility of statements under laws of evidence. U.S.C.A. Const. Amend.6.

Crawford V. Washington, 124 S. Ct. 1354 (2004).

Counsel was ineffective in denying Hardin the right to confront and cross-examine the witnesses against him.

Crawford V. Washington, 124 S.Ct.1354 (2004).

Shakeeta Butler personally informs trial counsel she had been taken to St. Francis Hospital prior to Hardin's arrest,by another resident of the 306 N. Rodney St. home (Jerry Butler) in the vehicle the majority of drugs in this case were found.

No pre-trial investigations were conducted when trial counsel could have easily verified Shakeeta Butler's claim with simple investigations (phone call) to St. Francis Hospital corroborating Shakeeta Butler was seen on the morning prior to Hardin's arrest, therefore, highly probable she had been taken to the hospital in the vehicle she confessed to have left the drugs.

Crisp V. Duckworth, 743 F.2d 580 (1984); U.S. V. Gray, 878 F.2d 702 (3rd Cir.1989); Strickland V. Washington, 466 U.S. 668 (1984).

55

Trial counsel was ineffective after exculpatory witness Shakeeta
Butler relays all the facts surrounding her confession , counsel
failed to obtain a written affidavit of Shakeeta  Butler's out-of-
court statement/confession or to call her to testify at trial, which
she was there and willing to testify.

Sanders V. Ratelle, 21 F.3d 1446 (9th Cir.1994).

ElDRIDGE V. ATKINS,665:F.2d 228 (1981).

Shakeeta Butler informed trial counsel that after hearing of
Hardin's arrest immediately upon her release from St. Francis Hospital
she was picked up by Jerry Butler in the same vehicle since it was
never seized (see:app.exhibit F,pg.53) then taken to the Wilmington
Police Department where she informs arresting officer (Sullivan) the
drugs found in the vehicle Hardin was charged with belonged to her
explaining when,where and why she had left them there. (see:app.
exhibit F,pg.57).

Trial counsel was informed state's witness (Sullivan) refused
to accept or even consider Shakeeta Butler's confession and deceitfully
persuades her the best way to help Hardin is to help him and in
return he'd help Hardin. Sullivan had no regards or concerns for
Shakeeta's safety when asking her assistance in setting up and
informing him of local dealers then recklessly calling her at any
given time asking of her progess. Shakeeta Butler plays her part
in assisting Sullivan in the arrest of several local dealers,
however,it was never enough or the bust wasn't big enough. Eventually
Shakeeta severed her dealings with Sullivan finding him to be insatiable
and dishonest. Trial counsel never mentions any of this.

Trial counsel was informed Sullivan had been given permission
to search Hardin's living quarters on the day in question due
to the decietful explanation he recited to Hardin's family members
that Hardin admitted to having a gun in his room. Once being
shown Hardin's living quarters Sullivan shuts the door behind
himself then exits moments later with a small white paper sandwich
bag in his hand. The contents of the bag was never reported nor
was the search of the home.

Trial counsel states, since Sullivan didn't report or charge
Hardin with whatever was taken from the home it's best not to
mention it.

Trial counsel was informed Hardin's witness Jerry Butler had
mitigating and exculpatory testimony evidence in Hardin's favor.
(1). Jerry Butler could have testified to taking Shakeeta Butler
to St. Francis Hospital on the day of 9-13-02 prior to Hardin's
arrest in the vehicle for which she confessed to have left the
illegal drug contraband. (2). Jerry Butler could have testified
that Hardin was not in the vehicle on the morning prior to his
arrest, and witness, Hardin was on his homes property and physically
removed by arresting officers,therefore, no circumstances existed
that warranted intrusion of the parked vehicle. (see:app.exhibit C,
pg.15). (3). Jerry Butler was one of the two family members who
answered the door on the morning of 9-13-02 and could have
testified to officer Sullivan's decietful tactics to gain entry
into the home.

57

(4). Jerry Butler was witness to Sullivan leave the home with evidence in a small white paper bag that was never reported or mentioned. (5). Finally, this witness (Jerry Butler) could have testified to picking up Shakeeta Butler from St. Francis Hospital then taking her to the Wilmington Police Department, and by her side when she confessed to Sullivan that the drugs found in the car were her's and not Hardin's. (see:app.exhibit F,pg.57).

Trial counsel was ineffective for failing to seek out or call witnesses whose testimony would have been beneficial to Hardin's defense.

Crisp V. Duckworth, 743 F.2d 580 (1984).

Trial counsel was incompetent when after excusing two of Hardin's four witnesses without interviewing them to determine if there testimony would be helpful, counsel fails to call either of the two remaining witnesses (Shakeeta Butler,Jerry Butler) she had subpoenad to testify. (see:app.exhibit E,pages 1-2).

Thus, denying Hardin the right to compulsory process for obtaining witnesses in his favor. U.S.C.A. Const. Amend.6.

The testimony of these two witnesses (Shakeeta Butler,Jerry Butler) were extremely critical and would have caused jurors to question Sullivan's credibility.

Therefore, failing to subject the State's case to any meaningful adversarial testing.

Strickland V. Washington, 466 U.S. 668, 104 S.Ct. 2052 (1984).

Had jurors been made aware of the above mentioned facts,and the fact,anytime a vehicle is involved in a situation for which a police officers assistance is needed, it is a requirement that officers run background checks on the vehicle as well as it's owner or operator, therefore,before any of the criminal proceedings took place Sullivan (arresting officer,affiant,drug expert) knew the vehicle in question was not registered or insured but listed as transfer under the owner/last owner's name (see:app.exhibit O, pg.5). Sullivan was also aware Hardin did not have a driver's license on the day in question nor has he ever had one, thus , unabling Hardin to register or operate a motor vehicle. (see:app. exhibit O,pages 1-2).

Sullivan was intentionally dishonest when suppressing this evidence, as well as the prosecution of this case.

Brady V. Maryland, 373 U.S. 85, 83 S.Ct. 1194.

If State's primary witness (Sullivan) lied about, and during , the above mentioned situations, what else has he lied under oath about?

Counsel was incompetent when failing to make the jury aware of Sullivan's willingness to lie and do whatever else necessary to secure any arrest/case he's involved with.

The Fourteenth Amendment cannot tolerate a conviction obtained with false evidence.

Miller V. Pate, 87 S.Ct. 785 (1967).

Napue V. Illinios, 360 U.S. 264, 79 S.Ct. 1173 (1959).

The vehicle in question is where the majority of drugs in
this case were found. The vehicle is where three of Hardin's four
charges were obtained from, as well as, the doctrines (plain view &
inevitable discovery) prosecution uses to justify the violation
of Hardin's Fourth Amendment rights despite the fact the vehicle
did not belong to Hardin.

Trial counsel was incompetent when the vehicle involved in
this case is such a critical piece of evidence of the State's case
against Hardin, counsel failed to conduct any pre-trial investigations
with the Department Of Motor Vehicle to substantiate Hardin's claim
that the vehicle was not registered nor did it belong to him.
Had it not been for the unprofessional errors of counsel the
outcome of the criminal proceedings would have been different.
Crisp V. Duckworth, 743 F.2d 580 (1984); U.S. V. Gray, 878 F.2d 702
(3rd Cir.1989); Strickland V. Washington, 466 U.S. 668,104 S.Ct.2052
(1984).

Trial counsel failed to conduct any pre-trial interviews or
investigations. Counsel failed to call any of Hardin's witnesses
to testify. Although trial counsel cross-examined State's witnesses
her delivery when doing so was passive and 95% of her questioning
was of no significant importance.

When trial counsel did finally ask State's primary witness
(Sullivan) a question of significant importance it concerned the
confession Shakeeta Butler had made at the Wilmington Police
Department to Sullivan, prosecution objects, defense counsel

60

willingly and completely withdraws from this line of questioning
without being ordered to do so by the Court and did not pursue
this matter any further. (see:app.exhibit F,pg.57).
Carter V. Rafferty, 826 F.2d 1299 (3rd Cir.1987).
U.S. V. Perdomo, 929 F.2d 967 (3rd Cir.1991).

Trial counsel made no attempt to subject the State's case to
an adversarial testing. Counsel offered no defense on Hardin's
behalf each strategic choice she made resulted in actual and
substantial disadvantage to the course of Hardin's defense.

The acts or omissions of counsel were not the result of
reasonable professional judgment,there is without a doubt, but
for counsel's unprofessional errors,result of the proceedings
would have been different.
Crisp V. Duckworth,743 F.2d 580 (1984); U.S. V. Gray, 878 F.2d 702
(3rd Cir.1989); Strickland V. Washington,466 U.S. 668, 104 S.Ct.2052
(1984).

Counsel's failure to interview,investigate or call any of
Hardin's witnesses after being thoroughly informed of all the
facts involved in this case giving counsel several plausible lines
of defense,mitigating and exculpatory as mentioned herein,
counsel failed to present any plausible line of defense to the
jury resulting in the loss of Hardin's trial.

Trial counsel's conduct so undermined the proper functioning
of the adversarial process that Hardin's trial cannot be relied
on as having produced a just result.
Gray V. Greer, 778 F.2d 350 (7th Cir.1985).

The purpose of appeal was to determine whether appellant had been lawfully convicted, and appellant during that first appeal had not previously had adequate opportunity to present his claims. U.S.C.A. Const. Amends. 6,14.

Evitts V. Lucey, 469 U.S. 387, 107 S.Ct. 830 (1985).

Hardin states he was unlawfully convicted, and did not have adequate opportunity to present his claims during first appeal due to the incompetence of defense counsel.

The testimony (evidence) in this case shows an informant's tip to be the cause of what initiates officers to pursue Hardin. (see: app.exhibits (B)pg.6, (C)pg.10). There are inconsistentcies in officers testimony as to how teh informant's tip was received (see: app.exhibit C,pages 18/41) and, suspiciously while there are three officers in the same vehicle when the tip was alleged to have been received only one officer was privy to this information. (see: app.exhibit C,pages 43/53).

Each officer testified prior to Hardin's arrest none of the officers involved observed anything suspicious or illegal. (see: app.exhibit F,pages 46,77,83).

There was probable cause,warrants,consent or reasonable suspicion to search Hardin on his homes porch property. (see:app.exhibit C, pg.14).

After the illegal search and seizure of Hardin two of the three officers involved in this case walked over to the parked vehicle Hardin had been seen in proximity of prior to his arrest and searched the car. (see:app.exhibit C,pg.15).

The vehicle is where the majority of cocaine in this case was
found also where Hardin's trafficking cocaine charge was obtained,
possession of marijuana and maintaining a vehicle charge, however, the
vehicle was not Hardin's nor was he in it when arrested. Hardin
has never had a driver's license, therefore, unable to register or
operate a motor vehicle. (see:app.exhibit O,pages 1-2). The vehicle
was not registered or insured and listed as transfer under the
owner/last owner's name. (see:app.exhibit O,pg.5).

However, at the opening of Hardin's suppression hearing to
remedy the fact there may not have been an informant or to aid
overzealous officers when making the illegal arrest of Hardin,
prosecution introduces essentially another argument that the
State would fall back on, which is not in the submission. (see:
app.exhibit C,pg.6).

Prosecution then recites a manufactured version that would allow
the State Court to introduce evidence from the illegal vehicle
search, the inevitable discovery rule.

The "inevitable discovery rule" provides an exception to the
fruit-of-the-poisonous tree doctrine that evidence obtained by
illegal means may nonetheless be admissible if the prosecution
can show that the evidence would eventually have been legally obtained
anyway.

Prosecution had no way of showing that the evidence obtained
from the vehicle he knew did not belong to Hardin would eventually
have been legally obtained anyway and made no attempt to try.

63

Therefore, the Court abused it's discretion when allowing prosecution to introduce and rely on the inevitable discovery doctrine, also not included in the original written affidavit of probable cause, but admitted during an after-the-fact scrutiny by the Court of officers probable cause when making the warrantless arrest of Hardin. (see:app.exhibit C,pg.7).

Materiality of evidence under Brady requirement that prosecution not withhold evidence that is favorable to accused and material to guilt or punishment is mixed question of law and fact and State Court determinations of law portions of this mixture are not entitled to presumption of correctness under habeas corpus governing statue. U.S.C.A. Const. Amends. 5,14; 28 U.S.C.A. 2254 (d).

Carter V. Rafferty, 826 F.2d 1299 (3rd Cir.1987).

Prosecutorial misconduct may be so exceptionally flagrant that it constitutes plan error, and is grounds for reversal even if the defendant did not object to it.

The plain view & inevitable discovery prosecution introduces, since not being objected to at the suppression hearing or challenged at trial due to it's clearly erroneous nature,it became law of the case doctrine.

The "law of the case doctrine" directs courts to refrain from re-deciding issues that were resolved earlier in litigation. Research Group V. Magnesium Elektron Inc., 123 F.3d 111 (3rd Cir.1997). Williams V. Runyon, 130 F.3d 568 (3rd Cir.1997).

Thus, causing a "structual error".

Hassine V. Zimmerman, 160 F.3d 941 (3rd Cir.1998).

This was not raised at trial.

64

Before an appellate court can correct error not raised at trial, there must be (1) error, (2) that is plain, and (3) that effects substantial rights, and if all three conditions are met,an appellate court may then exercise it's discretion to notice a forfeited error, but only if (4) the error seriously effects the fairness,integrity or public reputation of judicial proceedings.

U.S. V. Carter, 236 F.3d 777 (6th Cir.2001).

In order to establish that information is material for Brady purposes, inquiry for court is simply whether there is a reasonable probability that outcome of the trial would have been different.

Prosecutor's lack of knowledge does not render information unknown for Brady purposes,where the prosecution has not sought out information readily available to it. U.S.C.A. Const. Amend. 5. U.S. V. Perdomo, 929 F.2d 967 (3rd Cir.1991).

The fact that prosection introduces doctrines (plain view & inevitable discovery) obtained from a vehicle prosecution knew did not belong to Hardin then deceitfully asked the Court's permission to rely on these doctrines as justification of Hardin's Fourth Amend. violation constitutes "plain error."

Government Of Virgin Island V. Parrilla, 7 F.3d 1097 (3rd Cir.1993).

"Plain error" analysis requires case-by-case determination that includes examining factors such as obviousness of error, significance of interest protected by rule that was violated, seriousness of error in particular case, and reputation of judicial proceedings if error stands uncorrected, all with eye toward avoiding manifest injustice. Fed.Rules Cr. Proc. Rule 52 (b), 18 U.S.C.A. Government Of Virgin Islands V. Parrilla, 7 F.3d 1097 (3rd Cir.1993).

65

Counsel was ineffective during first appeal when failing to
challenge the fact evidence shows an informant's tip to be the
" "
cause of what initiates officers to pursue Hardin then change to an
alternative probable cause during an after-the-fact scrutiny by
the Court.

Counsel was ineffective for failing to raise this issue at
trial or on direct appeal, this is cause for procedural default
since it is the actual cause of the default, U.S.C.A. Const.Amend.6.
Johnson V. Ellingsworth, 783 F.Supp.215 (D.Del.1992).
Martin V. Maxey, 98 F.3d 844 (5th Cir.1996).

The confession Shakeeta Butler made which was briefly mentioned
during trial (see:app.exhibit F,pg.57), counsel was ineffective
during first appeal when failing to mention this exculpatory evidence
prosecution attempts to supress by objecting to it's admission.

The level of incompetence displayed in Hardin's case during
every stage of the proceedings leading to the judgement of
conviction meets and exceeds the two prong test of Strickland.

Because of all the facts outlined briefly herein, there is no
doubt that the outcome would have been different had it been,but
for, counsels errors!

66

## CONCLUSION

There is so much wrong with this case it could fill volumes, as is attested to by this lengthy, but necessary reply. Each of the aforementioned grounds has been demonstrated to carry merit sufficiently on it's own.  For the foregoing facts, citations and constitutional authorities, Petitioner (Hardin) as a matter of law is entitled to Habeas Corpus relief.

## Certificate of Service

I, _Rudolph V. Hardin_ ,hereby certify that I have served a true

And correct cop(ies) of the attached: _Reply_

_Writ of Habeas Corpus_ upon the following

parties/person (s):

TO: _Honorable Joseph J. Farnan Jr._    TO: _____

_Lock Box 18_    _____

_U.S. CourtHouse_    _____

_844 King St._    _____

_Wilmington, DE. 19801_    _____


TO: _____    TO: _____

_____    _____

_____    _____

_____    _____

_____    _____


**BY PLACING SAME IN A SEALED ENVELOPE,** and depositing same in the United
States Mail at the Delaware Correctional Center, Smyrna, DE 19977.


On this _28_ day of _November_ ,200_6_

_____

I/M Rudolph Hardin
SBI# 180391   UNIT D2
DELAWARE CORRECTIONAL CENTER
1181 PADDOCK ROAD
SMYRNA, DELAWARE 19977





Honorable Joseph J. Farnan Jr.
LockBox 18
U.S. CourtHouse
Wilmington, Del 19801



Legal Mail